UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROBERT E. SCOTT | CIVIL ACTION NO. 19-0911 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PAM HEARNE, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 41) filed by the remaining Defendant, the State of Louisiana ("the State"), through the Department of Public Safety & Corrections ("DOPSC"). The State seeks dismissal on the ground that Plaintiff Robert Scott ("Scott") failed to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA") regarding all claims. See id. The State submits summary judgment is appropriate because there is no genuine issue of material fact regarding Scott's claims and his lack of exhaustion. See id. Scott opposes the Motion for Summary Judgment, suggesting that Bargher v. White, 928 F.3d 439 (5th Cir. 2019), was wrongly decided and should be rejected by this Court. See Record Document 43. Alternatively, Scott contends any dismissal should be without prejudice. See id. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

The State filed a Statement of Undisputed Facts. See Record Document 41-2. In response, Scott admitted all facts. See Record Document 43-1. Thus, the background facts set forth in the instant ruling are drawn almost exclusively from the State's Statement of Undisputed Facts.

Scott, formerly incarcerated at David Wade Correctional Center ("DWCC"), filed the instant lawsuit on July 15, 2019. See Record Document 1. He was incarcerated at that time. On June 17, 2020, Scott was released from the custody of the Louisiana DOPSC. On October 22, 2020, he filed an Amended Complaint. See Record Document 25.

The Amended Complaint raised claims relating to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("RA"). See id. The Amended Complaint alleges that the State – through the DOPSC – failed to comply with the ADA and RA while he was incarcerated at DWCC. See id. In his Amended Complaint, Scott specifically alleges that DWCC has a history of mistreating inmates with disabilities; that he encountered physical barriers at DWCC that caused him physical injuries and limited his access to programs, services, and activities; and DOPSC excluded him from sports and hobbycraft and refused to provide him with equal access to employment opportunities on the basis of his disability, all in violation of the ADA and RA. See id.

Scott filed multiple grievances while in custody.[1] In June 2017, he filed Administrative Remedy Procedure DWCC-2016-0517. It was received and accepted by the Warden's Office on June 7, 2016. In this grievance, Scott alleged that, while on administrative segregation, security took his wheelchair and when he filed a "sick call" requesting artificial legs, he was denied artificial legs. DWCC-2016-0517 was exhausted through the Second Step on September 28, 2016. The grievance was ultimately denied

---

[1] The State submitted a certified copy of all grievances. See Record Documents 41-4 through 41-10. Scott has not challenged the content or authenticity of the grievances submitted by the State.

with a finding that a wheelchair was acceptable for mobility, prosthetic legs do not offer additional benefits, and prosthetic legs are not medically necessary.

In June 2016, Scott filed Administrative Remedy Procedure DWCC-2016-0602. It was received and accepted by the Warden's Office on June 24, 2016. The grievance related to events occurring on May 21-22, 2016 where Scott was temporarily placed in a non-handicap accessible cell. DWCC-2016-0602 was exhausted through the Second Step on February 8, 2017. The grievance was ultimately denied with a finding that while Scott was initially placed in a non-handicap accessible cell, he was shortly thereafter placed in a handicap accessible cell. Scott's wheelchair was returned to him, and prior to it being returned, the wheelchair was available to him upon request.

On August 12, 2016, the Warden's Office received and accepted Administrative Remedy Procedure DWCC-2016-0792, a grievance filed by Scott. Scott stated he was placed in N2 Cell 16. He does not reference if such cell was non-handicap accessible. Scott withdrew DWCC-2016-0792 on August 24, 2016.

In December 2017, Scott filed Administrative Remedy Procedure DWCC-2017-0940. It was received and accepted by the Warden's Office on December 6, 2017. Scott complained he was forced to go outside and work in the very cold weather and this constituted cruel and unusual punishment. The First Step Response stated that Scott's duty status had no cold weather duty restrictions. He was encouraged to submit a sick call regarding any medical issues experienced during cold weather. DWCC-2017-0940 was not exhausted through the Second Step.

In July 2018, Scott filed Administrative Remedy Procedure DWCC-2018-0513. It was received and accepted by the Warden's Office on July 31, 2018. Scott stated that

he was prescribed Neurontin to manage chronic nerve damage. Scott submitted that his medication should have been given to him on a yearly, not a monthly, basis. He also believed that charging $5 to refill the prescription was a scheme to make money. As part of the First Response, Scott was examined by Dr. Fuller and placed on the alternative medication Cymbalta. Scott escalated the grievance to the Second Step. The grievance was denied, as medical opinion is controlling and the fees charged were in accordance with policy. Thus, DWCC-2018-0513 was exhausted through the Second Step on October 29, 2018.

On August 15, 2019, the Warden's Office received and accepted Administrative Remedy Procedure DWCC-2019-0570, a grievance filed by Scott. Scott stated that on June 19, 2019, he was injured when Sergeant Reed allegedly closed the cell doors on Scott. Scott further stated that his wheelchair was bent up and that Sergeant Norris twisted and bent Scott's arm causing more pain and emotional distress. Scott stated that his wheelchair was sent to maintenance for repair, but it was still bent when returned. The First Step found that the allegations of the grievance were disproved and the grievance was without merit. Scott escalated the grievance to the Second Step. The Second Step response found that there was no evidence to substantiate Scott's allegations and his request for relief was denied. DWCC-2019-0570 was exhausted through the Second Step on October 2, 2019.

## LAW AND ANALYSIS

The State asserts that Scott has failed to exhaust his administrative remedies for the claims advanced in the Amended Complaint. See Record Document 41. Thus, Scott's case should be dismissed without prejudice. See id.

As previously noted, Scott does not dispute the State's material facts. See Record Document 43-1. Such facts are admitted. Additionally, Scott admits that the PLRA exhaustion requirement applies to his Amended Complaint. See Record Document 43 at 1. However, he "suggests that the Fifth Circuit's ruling in Bargher, 928 F.3d 439, was wrongly decided and should be rejected by this Court as bad law" because it is based on "shaky ground." Id. at 2. Alternatively, Scott submits that if the Court rejects his argument and finds that the action must be dismissed for failure to exhaust, the dismissal should be without prejudice. See id.[2]

## I.     Rule 56 Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[2] Scott's opposition is roughly two pages. See Record Document 43. Counsel admits the following:

> Mr. Scott filed his original Complaint pro se while incarcerated. Undersigned enrolled during the midst of litigation and, seeking to streamline the action, prepared and filed an amended complaint for Mr. Scott. After filing that amended complaint, however, undersigned learned that under Bargher v. White, the PLRA exhaustion requirement would still apply to an amended complaint, although it would not apply to a refiled complaint. 928 F.3d 439, 447-49 (2019). Presently, Mr. Scott is not incarcerated.
> However, due to prescription, undersigned cannot voluntarily dismiss and re-file Mr. Scott's case. . . .
> Thus, Mr. Scott opposes Defendant's motion for summary judgment and the dismissal of his action.

Record Document 43 at 1-2.

See id.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

II.     **Exhaustion Standard.**

42 U.S.C. 1997e(a), provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confinement in any jail, prison, or other correctional facility until such administrative remedies are exhausted."  This statute is interpreted broadly.  See Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002).  "[T]he PLRA pre-filing exhaustion requirement is mandatory and non-discretionary."  Gonzalez v. Seal, 702 F.3d 785, 787 (5th Cir. 2021)(per curiam). "It is irrelevant whether exhaustion is achieved during the federal proceeding.  Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted."  Id. at 788.

Exhaustion is an affirmative defense, so the burden is on the defendant to demonstrate that the prisoner failed to exhaust available administrative remedies.  See Jones v. Bock, 549 U.S. 199,127 S.Ct. 910 (2007).  A defendant "must establish beyond

peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). Scott is not relieved of the obligation to exhaust his administrative remedies as a benefit of his release because he initiated his action while incarcerated. See Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019).

Pursuant to the PLRA, "prisoners must properly exhaust such administrative remedies as are available prior to filing a section 1983 action concerning prison conditions." Dillon, 596 F.3d at 265. In Louisiana, there is a two-step Administrative Remedy Procedure for inmates, which they are required to use prior to filing suit in district court. See id. "If the inmate is not satisfied with the second step response, he or she may then file suit in district court." Id. at 266.

Here, to survive the challenge of exhaustion, Scott would have needed to exhaust his administrative remedies prior to the filing of his lawsuit on July 15, 2019, when his Original Complaint was filed.

### III.     Exhaustion Analysis.

As mentioned previously, Scott filed multiple grievances while incarcerated. He makes no reference to or claims relative to DWCC-2016-0517, DWCC-2016-0602, or DWCC-2016-0792 in his Amended Complaint. With respect to his claims that he was denied work opportunities, the only possible applicable grievance is DWCC-2017-0940. In DWCC-2017-0940, Scott complained that he was required to work in cold weather causing him pain. This grievance was not related to an inability to gain other employment at DWCC. Further, DWCC-2017-0940 was not exhausted because Scott did not continue to the second step.

Grievance DWCC-2018-0513 could potentially be related to Scott falling in the shower[3] and the ADA. But a closer review reveals that it is not for purposes of exhaustion. This grievance dealt with the manner in which Scott was prescribed medications, the medications prescribed, and the charges for medications. The grievance was made against the Paula Millwee, Dr. Hearn, Warden Rachal and Warden Goodwin. Yet, the grievance does not identify the shower chair incident. There is no reference in the grievance to the manner in which the shower chair was attached to the wall or an allegation that he suffered an injury related to that event. In fact, the medication referenced in the grievance was prescribed/started prior to Scott's fall in the shower. Grievance DWCC-2018-0513 does contain the statement, "I'm being discriminated against a denial of equal protection violation of the American with disabilities act." Record Document 41-8 at 4. Yet, this is not specific enough to provide sufficient notice regarding any of Scott's claims concerning inaccessible architectural features, inaccessible showers, inaccessible routes, work duty selection, inability to access or participate in programs, or any other claims advanced in the Amended Complaint. Thus, while this grievance may have been fully exhausted, there are no claims relative to this grievance asserted in the Amended Complaint.

The last grievance filed by Scott was DWCC-2019-0570 – the grievance seeking redress for the alleged negligent actions of Sergeant Reed and Sergeant Norris. This grievance was filed on August 15, 2019, and exhausted when Scott received the Second

---

[3] In the Amended Complaint, Scott alleges that "[o]n or around August 11, 2018, [he] was showering while seated in a shower chair that was attached to the wall. Upon information and belief, the shower chair was not properly attached to the wall, causing the chair to detach while [he] was seated in the chair. This caused [him] to fall and strike his head. [He] suffered injuries to his head, neck, back, and hip." Record Document 25 at ¶ 30.

Step Response on November 18, 2019. Thus, this grievance was not exhausted until after the Original Complaint was filed on July 15, 2019, but prior to the filing of the Amended Complaint on October 22, 2020. The Amended Complaint does, in fact, refer to, and bases causes of action, in part, on grievance DWCC-2019-0570. Yet, despite being fully exhausted, it is untimely. Proper exhaustion requires that the grievance be fully exhausted prior to the filing of the Original Complaint. "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." Gonzalez, 702 F.3d at 788. In fact, the Fifth Circuit held that, "there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory." Id. Accordingly, the entirety of Scott's case must be dismissed without prejudice because he has failed to properly exhaust his administrative remedies.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Scott did not exhaust his administrative remedies prior to filing his Original Complaint on July 15, 2019. Thus, the State's Motion for Summary Judgment (Record Document 41) seeking dismissal on the ground that Scott failed to exhaust his administrative remedies in compliance with the PLRA is **GRANTED**. All of Scott's claims are **DISMISSED WITHOUT PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of April, 2023.

_____
United States District Judge